UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,   )
           )
and            )
           )
THE MICHIGAN DEPARTMENT  )
OF ENVIRONMENT, GREAT LAKES, )
AND ENERGY,       )
           )
   Plaintiffs,    )  Civil Action No.  5:21-cv-12098
           )
   v.       )
           )
ARBOR HILLS ENERGY LLC,   )
           )
   Defendant.    )
_____)

## COMPLAINT

   The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Michigan Department of Environmental, Great Lakes, and Energy ("EGLE"), through the undersigned attorneys, allege:

## NATURE OF THE ACTION

   1.  This is a civil action brought against Arbor Hills Energy LLC ("Defendant") pursuant to Section 113(b) of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. § 7413(b) and Section 5530 of Part 55, Air Pollution Control, of the Michigan Natural Resources and Environmental Protection Act ("Part 55 of the NREPA"), Mich. Comp. Laws § 324.5530, for injunctive relief, including mitigation measures, and the assessment of civil penalties and

civil fines for violations of the following statutory and regulatory provisions: Title V of the CAA, 42 U.S.C. §§ 7661-7661f, the federally approved Michigan Title V program, and Section 3 of the applicable Renewable Operating Permit ("ROP"); the New Source Performance Standards ("NSPS") General Provisions, at 40 C.F.R. § 60.11(d); the National Emission Standards for Hazardous Air Pollutants ("NESHAP") General Provisions, at 40 C.F.R. § 63.6(e)(1); the NSPS for Stationary Gas Turbines, at 40 C.F.R. Part 60, Subpart GG; Michigan's rule for permits to install, Mich. Admin. Code, R. 336.1201; the NESHAP for Municipal Solid Waste ("MSW") Landfills, at 40 C.F.R. Part 63, Subpart AAAA; NSPS for MSW Landfills, at 40 C.F.R. Part 60, Subpart WWW; and Michigan's rule for performance test criteria, Mich. Admin. Code R. 336.2003.

2.      The violations occurred at Defendant's landfill gas-to-energy plant located at 10611 West Five Mile Road, Northville, Michigan 48167 ("the Facility").  The Facility is adjacent to Arbor Hills Landfill, which is owned and operated by another company.  The Facility converts landfill gas ("LFG"), which is generated by decomposition of waste in the landfill, into electricity by burning it as fuel in four gas turbines, three of which have auxiliary duct burners. This process releases sulfur dioxide ("$SO_2$") and other pollutants into the air.

3.      Defendant is the owner and operator of the Facility, which: (1) emitted $SO_2$ at levels that exceed limits in the ROP at all four of the Facility's turbines and all three of its auxiliary duct burners; (2) failed to operate the Facility and air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions; (3) used diesel fuel as an unpermitted alternative to LFG for startup of the plant's three stationary gas turbines and failed to monitor the sulfur content of the fuel; (4) allowed the four stacks for the LFG treatment system's main compressors and the one stack for the two auxiliary compressors

to vent untreated LFG when the compressors were turned off; and (5) failed to perform stack testing under representative conditions.

4.      As a result of Defendant's continued operation of the Facility in violation of the permitted $SO_2$ limits, excess $SO_2$ has been released into the atmosphere, and, upon information and belief, will continue to be released in violation of the Act and Part 55 of the NREPA.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction of the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367(a).  This Court has personal jurisdiction over the Defendant, which does business in the State of Michigan and in this judicial District.

6.      Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c) and 1395(a), because violations occurred and are occurring in this District, and the Facility at issue is operated by the Defendant in this District.

## AUTHORITY

7.      Authority to bring this action is vested in the Attorney General of the United States pursuant to Section 305 of the Act, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.  The authority of EGLE to bring this action derives from the CAA and Section 5530 of the NREPA, Mich. Comp. Laws § 324.5530.

## NOTICES

8.      EPA issued Notices of Violation and Findings of Violation ("NOV/FOVs") to Defendant on September 29, 2016, June 4, 2018, and April 21, 2020.

**THE DEFENDANT**

9.      Defendant is incorporated in Delaware and is a subsidiary of Fortistar

Methane Group, a domestic company that owns and operates approximately 60 LFG-to-energy

projects across the United States.  Defendant is the current "owner or operator" of the Facility, as

that term is defined in Section 111(a)(5) of the Act, 42 U.S.C. § 7411(a)(5).

10.     For purposes of Section 113(b) of the Act, 42 U.S.C. § 7413(b), Defendant

is, and has been at all times relevant to the present action, a "person" as defined in Section 302(e)

of the Act, 42 U.S.C. § 7602(e), and the applicable federal and state regulations.

**STATUTORY AND REGULATORY BACKGROUND**

11.     The Clean Air Act is designed to protect and enhance the quality of the

nation's air resources so as to promote the public health and welfare and the productive capacity

of its population.  Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

**CAA Title I: The National Ambient Air Quality Standards**

12.     Title I, Section 109 of the Act, 42 U.S.C. § 7409, requires the

Administrator of EPA to promulgate regulations establishing primary and secondary national

ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for

which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408.

The primary NAAQS are to be adequate to protect the public health with an adequate margin of

safety, and the secondary NAAQS are to be adequate to protect the public welfare from any

known or anticipated adverse effects associated with the presence of the air pollutant in the

ambient air.

13.     Pursuant to CAA Section 109(a) and (b), EPA promulgated regulations

that established NAAQS for $SO_2$, which are codified at 40 C.F.R. §§ 50.4 and 50.5.

14.     Under CAA Section 110, 42 U.S.C. § 7410, each state is required to adopt and submit to EPA for approval a State Implementation Plan ("SIP") that provides for the implementation, maintenance, and enforcement of NAAQS established under CAA Section 109. Upon EPA's approval, SIP provisions become part of the "applicable implementation plan" for the State within the meaning of CAA Section 302(q), 42 U.S.C. § 7602(q).

15.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, the State of Michigan submitted to EPA various statutes, rules, and other provisions that were subsequently approved by EPA and which, taken together, constitute the SIP for the State of Michigan.  *See* 40 C.F.R. Part 52, Subpart X.  The statutes, rules, and other provisions that EPA approved for the State of Michigan are hereafter referred to as the "Michigan SIP."

**The Clean Air Act New Source Performance Standards**

16.     Section 111 of the CAA, 42 U.S.C. § 7411, requires EPA to promulgate performance standards for new stationary sources, including MSW landfills and turbines, to achieve the maximum emission reduction possible for each source category.

17.     Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, EPA promulgated the New Source Performance Standards ("NSPS") General Provisions at 40 C.F.R. Part 60, Subpart A, which contain general provisions that apply to the owner or operator of any stationary source that contains an affected facility, the construction or modification of which is commenced after the date of publication of any NSPS standard applicable to the facility.  40 C.F.R. § 60.1(a).

18.     Pursuant to 40 C.F.R. § 60.11(d), the NSPS General Provisions require that, at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practices for

5

minimizing emissions, which is determined by information that may include monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

19.     Pursuant to 40 C.F.R. § 60.7, the NSPS General Provisions require the owner or operator of a facility to provide EPA notification of any physical or operational change to an existing facility which may increase the emission rate of any air pollutant to which a standard applies.

20.     Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, on September 10, 1979, EPA promulgated the NSPS for Stationary Gas Turbines at 40 C.F.R. Part 60, Subpart GG. *See* 44 Fed. Reg. 52,792.

21.     Pursuant to 40 C.F.R. § 60.330, the NSPS for Stationary Gas Turbines applies to all stationary gas turbines with a heat input at peak load equal to or greater than 10.7 gigajoules (10 million British Thermal Units (BTUs)) per hour, based on the lower heating value of the fuel fired, which commenced construction, modification, or reconstruction after October 3, 1977.

22.     Pursuant to 40 C.F.R. § 60.333, the NSPS for Stationary Gas Turbines requires owners and operators subject to the provisions of the subpart to either: (a) not discharge from any stationary gas turbine any gases which contain $SO_2$ in excess of 0.015 percent by volume at 15 percent oxygen and on a dry basis; or (b) not burn in any stationary gas turbine any fuel which contains total sulfur in excess of 0.8 percent by weight (8000 ppmw).

23.      Pursuant to 40 C.F.R. § 60.334(h), the NSPS for Stationary Gas Turbines requires the owner or operator of any stationary gas turbine to monitor the total sulfur content of the fuel being fired in the turbine.

24.     Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, on July 6, 2006, EPA promulgated the NSPS for Stationary Combustion Turbines at 40 C.F.R. Part 60, Subpart KKKK. *See* 71 Fed. Reg. 38,497.

25.     Pursuant to 40 C.F.R. § 60.4305, the NSPS for Stationary Combustion Turbines applies to all stationary combustion turbines with a heat input at peak load equal to or greater than 10.7 gigajoules (10 million BTUs) per hour, based on the higher heating value of the fuel fired, which commenced construction, modification, or reconstruction after February 18, 2005.

26.     Pursuant to 40 C.F.R. § 60.4330(a), the NSPS for Stationary Combustion Turbines requires all stationary combustion turbine owners and operators in the continental United States that are subject to the provisions of the subpart to either: (1) not discharge into the atmosphere from the subject stationary combustion turbine any gases which contain $SO_2$ in excess of 110 nanograms per Joule (ng/J) (0.90 pounds per megawatt-hour (lb/MWh)) gross output; (2) not burn in the subject stationary combustion turbine any fuel which contains total potential sulfur emissions in excess of 26 ng $SO_2$/J (0.060 lb $SO_2$/MMBtu) heat input (if the turbine simultaneously fires multiple fuels, each fuel must meet this requirement); or (3) for each stationary combustion turbine burning at least 50 percent biogas on a calendar month basis, to not discharge any gases that contain $SO_2$ in excess of 65 ng $SO_2$/J (0.15 lb $SO_2$/MMBtu) heat input.

27.     Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, on March 12 1996, EPA promulgated the NSPS for MSW Landfills at 40 C.F.R. Part 60 Subpart WWW.  *See* 61 Fed. Reg. 9919.

28.     Pursuant to 40 C.F.R. § 60.750, the NSPS for MSW Landfills applies to all MSW landfills that commenced construction, reconstruction, or modification on or after May 30, 1991, but before July 18, 2014.

29.     Pursuant to 40 C.F.R. § 60.752, the NSPS for MSW Landfills requires MSW landfills with a design capacity of more than 2.5 million megagrams by mass or 2.5 million cubic meters by volume to calculate the nonmethane organic compound ("NMOC") emission rate of the landfill.  If the NMOC emission rate is greater than 50 megagrams per year, the landfill is required to install, operate, and monitor a gas collection and control system in accordance with NSPS requirements.

30.     Pursuant to 40 C.F.R. § 60.752(b)(2)(iii)(A) or (B), the NSPS for MSW Landfills requires all collected gas to be routed to a control system that is an open flare or a control system designed and operated to reduce NMOC by 98 weight-percent, or, when an enclosed combustion device is used for control, to either reduce NMOC by 98 weight percent or reduce the outlet NMOC concentration to less than 20 parts per million by volume, dry basis as hexane at 3 percent oxygen.

31.     Pursuant to 40 C.F.R. § 60.752(b)(2)(iii)(C), the NSPS for MSW Landfills requires owners and operators to "[r]oute the collected gas to a treatment system that processes the collected gas for subsequent sale or use.  All emissions from any atmospheric vent from the gas treatment system shall be subject to the requirements of paragraph (b)(2)(iii)(A) or (B) of this section."

### The Clean Air Act National Emissions Standards for Hazardous Air Pollutants

32.     Section 112(d) of the CAA, 42 U.S.C. § 7412(d), requires EPA to promulgate emission standards for sources of hazardous air pollutants ("HAPs") to achieve the

8

maximum emission reduction of HAPs possible for each source category, taking into consideration the cost of achieving such emission reduction, and any non-air quality health and environmental impacts and energy requirements.

33.     The HAPs emitted by stationary gas turbines include, but are not limited to, formaldehyde, polycyclic aromatic hydrocarbons ("PAH"), benzene, toluene, and xylene. Each of the HAPs emitted from stationary gas turbines can cause adverse health effects.

34.     Pursuant to Section 112(d) of the CAA, 42 U.S.C. § 7412(d), EPA promulgated the National Emission Standards for Hazardous Air Pollutants ("NESHAP") General Provisions, at 40 C.F.R. Part 63, Subpart A, which contains general provisions that apply as specified in the relevant NESHAP.  40 C.F.R. § 63.1(a)(4)(i).

35.     Pursuant to 40 C.F.R. § 63.6(e), the NESHAP General Provisions require that, at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected source, including associated air pollution control equipment, in a manner consistent with good air pollution control practices for minimizing emissions, which is determined by information that may include monitoring results, opacity observations, review of operating and maintenance procedures, and inspection of the source.

36.     Pursuant to Section 112(d) of the CAA, 42 U.S.C. § 7412(d), on March 5, 2004, EPA promulgated the NESHAP for Stationary Combustion Turbines at 40 C.F.R. Part 63, Subpart YYYY.  *See* 69 FR 10,537.

37.     The NESHAP General Provisions that apply to stationary combustion turbines are specified in 40 C.F.R. Part 63, Subpart YYYY, Table 7, and include the operation and maintenance requirements at 40 C.F.R. § 63.6(e).

38.     Pursuant to Section 112(d) of the CAA, 42 U.S.C. § 7412(d), on January 16, 2003, EPA promulgated the NESHAP for MSW Landfills at 40 C.F.R. Part 63, Subpart AAAA. *See* 68 Fed. Reg. 2227.

39.     On March 26, 2020, EPA finalized changes made to the Landfill NESHAP based on a residual risk and technology review.

40.     Pursuant to 40 C.F.R. § 63.1955, the MSW Landfills NESHAP requires, *inter alia*, that MSW landfills continue to comply with NSPS for MSW Landfills at 40 C.F.R. Part 60, Subpart WWW.

**The Clean Air Act Title V Program**

41.     CAA Sections 501 through 507 ("Title V"), 42 U.S.C. §§ 7661-7661f, establish an operating permit program for certain air pollution sources, including "major sources." The Title V permits contain all applicable emission limitations and standards to ensure that all "applicable requirements" for compliance with the CAA are collected in one place.

42.     "Major source" under Title V includes, *inter alia*, any stationary source that is a "major source" as defined in Sections 302(j) and 501(2) of the CAA, 42 U.S.C. §§ 7602(j); 7661(2). *See also* 40 C.F.R. § 70.2. Among other things, "major sources" include sources that directly emit, or have the potential to emit, greater than 100 tons per year or more of any criteria pollutant, 10 tons per year or more of any single HAP, or 25 tons per year or more of any combined HAPs.

43.     CAA Section 502(a), 42 U.S.C. § 7661a(a), makes it unlawful for any person to violate any requirement of a permit issued under Title V or to operate a major source except in compliance with a permit issued by a permitting authority under Title V.

44.     CAA Section 504(a), 42 U.S.C. § 7661c(a), the federal implementing regulations of Title V of the CAA, 40 C.F.R. Part 70, and Michigan Air Pollution Control Rule 213 of the Michigan Title V operating permit program, Mich. Admin. Code R. 336.1213, have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the CAA, the NESHAP, and the applicable SIP.

45.     Pursuant to 40 C.F.R. Part 70, EPA granted final approval to Michigan's Title V operating permit program, effective November 30, 2001.  66 Fed. Reg. 62,949 (Dec. 4, 2001).  The Michigan rules governing the Title V permit program, also known as the "renewable operating permit program," are codified at Michigan Air Pollution Control Rules 210 through 219, Mich. Admin. Code R. 336.1210 through 336.1219.

46.     In accordance with CAA Section 113(b), 42 U.S.C. § 7413(b), operating permits issued under an approved program are federally enforceable.

47.     Pursuant to its authority under Title V of the CAA, EGLE issued Defendant a Title V permit, referred to as a Renewable Operating Permit, or ROP, on January 24, 2011 for the Facility, and the permit was subsequently revised on March 28, 2018. Defendant continues to operate the Facility under this ROP ("Facility ROP").  40 C.F.R. § 70.7(b); Mich. Admin. Code R. 336.1210.

**Additional State Requirements**

48.     Michigan Air Pollution Control Rule 201, Mich. Admin. Code R. 336.1201, provides, *inter alia*, that, unless EGLE issues a permit to install, "a person shall not install, construct, reconstruct, relocate, or modify any process or process equipment, including

control equipment pertaining thereto, which may emit… [a]ny pollutant regulated by Title I of the clean air act and its associated rules…"

49.     Michigan Air Pollution Control Rule 1001(1)(c) and (e), Mich. Admin. Code R. 336.2001(1)(c) and (e), requires performance tests where "[t]he owner or operator of the source has not submitted an acceptable performance test, in accordance with R. 336.2003, that demonstrates that the source is in compliance with the department's rules and with the conditions specified in the permit to install" or where "the source of air contaminant has potential emissions in excess of 100 tons per year, is located in an area designated as attainment for 1 or more air pollutants, and more than 36 months have expired since the date of the last performance test for such designated attainment pollutants."

50.     Performance tests completed pursuant to Michigan Air Pollution Control Rule 1001 must comply with Michigan Air Pollution Control Rule 1003, Mich. Admin. Code R. 336.2003, which requires, *inter alia*, that performance tests be conducted while the facility is operating at "maximum routine operating conditions," unless otherwise directed by EGLE.

## ENFORCEMENT PROVISIONS

51.     Section 113(a)(1) and (3) of the Act, 42 U.S.C. § 7413(a)(1) and (3), provide that EPA may bring a civil action in accordance with Section 113(b) of the Act whenever it finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the Title V provisions of the Act, the applicable SIP, or any permit or regulation issued thereunder.

52.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $37,500 per day for each violation occurring on or after January 13, 2009 and up to and

including November 2, 2015, and $102,638 per day for each violation occurring after November 2, 2015, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 (note), as amended by 31 U.S.C. § 3701 (note), 40 C.F.R. § 19.4, and 85 Fed. Reg. 83,818 (Dec. 23, 2020), against any person whenever such person has violated, or is in violation of, *inter alia*, the requirements or prohibitions described in the preceding Paragraph.

53.     40 C.F.R. § 52.23 provides that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. § 7413.

54.     Section 304(a) of the CAA, 42 U.S.C. § 7604(a), authorizes any person to commence a civil action for a violation of an emission standard or limitation.  The State of Michigan is a "person" within the meaning of CAA Section 304.  42 U.S.C. § 7602(e).

55.     Pursuant to Section 5530 of the NREPA, Mich. Comp. Laws § 324.5530, EGLE may seek injunctive relief and a civil fine of up to $10,000 for each violation of Part 55 of the NREPA, a rule promulgated under Part 55 of the NREPA, and a permit issued under Part 55 of the NREPA.

## **GENERAL ALLEGATIONS**

56.     Paragraphs 1 through 55 are re-alleged and incorporated herein by reference.

57.     Defendant owns and operates the Facility located at 10611 West Five Mile Road in Northville, Michigan that converts LFG generated by an adjacent landfill into electricity by burning it as fuel in three European Gas Turbines (hereinafter "Three EGTs"), each of which has an associated duct burner (hereinafter "Three EGT-Associated Duct Burners"), and one Solar

Taurus turbine (hereinafter "Solar Taurus Turbine").  This process releases $SO_2$ and other pollutants into the air.

58.     Defendant is responsible for operating and maintaining the Facility's turbines as the primary LFG control system for the adjacent landfill.

59.     At all times relevant to this Complaint, the Facility was part of a "major stationary source," a "major emitting facility," and a "major source," within the meaning of the Act and the applicable regulations in the Michigan SIP, because the Facility is a LFG-to-energy plant that emits or has the potential to emit in excess of 100 tons per year of the criteria pollutants $SO_2$, nitrogen oxide, and/or carbon monoxide ("CO") and in excess of 10 tons per year of the HAP hydrogen chloride.

60.     On March 10 and 11, 2015, Defendant conducted performance testing for the Three EGTs.

61.     On September 11, 2015 and November 6, 2015, Michigan issued Violation Notices ("VNs") alleging that the results from the March 10 and 11, 2015 performance tests demonstrated exceedances of the $SO_2$ limits in the ROP for the Three EGTs.

62.     On May 4, 2016, EPA conducted an inspection of the Facility.

63.     On June 1, 2016, EPA issued an information request to Defendant under Section 114(a) of the CAA, 42 U.S.C. § 7414.

64.     On July 6, 2016, Defendant submitted information to EPA in response to the June 1, 2016 Section 114(a) Information Request.

65.     On September 29, 2016, EPA issued a finding of violation ("FOV") alleging violations of the NSPS and NESHAP General Provisions as well as the Facility ROP.

66.     On March 9, 2018, EPA issued a second information request to Defendant under Section 114(a) of the CAA, 42 U.S.C. § 7414.

67.     On March 27, 2018, EPA received a response to the March 9, 2018 Section 114(a) Information Request.

68.     On June 1, 2018, Defendant completed a performance test for the Solar Taurus Turbine.

69.      On June 4, 2018, EPA issued a second FOV alleging ongoing violations of the Facility ROP.

70.     From May 29 through June 1, 2018, Defendant completed performance testing for the Three EGTs and the Three EGT-Associated Duct Burners.

71.     On July 31, 2018, Michigan received performance test results from Defendant for the May 29 through June 1, 2018 performance testing.

72.     On August 30, 2018, Michigan issued a VN arising from the Defendant's July 31, 2018 performance test results, alleging violations of Michigan Air Pollution Control Rule 1003, Mich. Admin. Code R. 336.2003, and of the Facility ROP.

73.     On January 8, 2019, Michigan conducted an inspection of the Facility.

74.     On February 1, 2019, March 14, 2019, April 11, 2019, October 22, 2019, and December 9, 2019, Michigan issued VNs alleging violations of the NSPS for Stationary Gas Turbines, the NSPS for MSW Landfills, the NESHAP for MSW Landfills, and the Facility ROP.

75.     On December 20, 2019, Defendant completed a performance test for the Solar Taurus Turbine.

76.     On February 18, 2020, Michigan received performance test results from Defendant for the December 20, 2019 performance test of the Solar Taurus Turbine.

77. On March 3, 2020, Michigan issued a VN alleging violations of the Facility ROP.

78. On January 10, 2020, EPA issued a third information request to Defendant under Section 114(a) of the CAA, 42 U.S.C. § 7414.

79. On February 19, 2020, Defendant submitted information to EPA in response to the January 10, 2020 Section 114(a) Information Request.

80. On April 23, 2020, EPA issued a third FOV alleging violations of the NSPS for MSW Landfills and NSPS for Stationary Gas Turbines, as well as the Facility ROP.

81. On September 25, 2020, Defendant completed a performance test for the Solar Taurus Turbine.

82. On November 25, 2020, Michigan received performance test results from Defendant for the September 25, 2020 performance test of the Solar Taurus Turbine.

83. On December 2, 2020, Michigan issued a VN alleging violations of the Facility ROP.

84. Due to Defendant's failure at the Facility to comply with the requirements of applicable CAA provisions and related regulations promulgated by EPA and the State of Michigan, and with the emissions limits and other requirements set forth in the Facility ROP, Plaintiffs allege the following five Claims for Relief.

**First Claim for Relief: $SO_2$ Emissions Exceedances for Three EGTs, Three EGT-Associated Duct Burners, and Solar Taurus Turbine**

85. Paragraphs 1 through 84 are re-alleged and incorporated by reference.

**$SO_2$ Exceedances for Three EGTs**

86. Section 3 of the Facility ROP sets hourly and annual $SO_2$ emission limits for the Three EGTs as follows:

a.   hourly limit of 2.9 lbs/hr; and

b.   annual limit of 12.5 tpy, based on a rolling, 12-month average.

87.      Based on information that Defendant submitted to EPA in response to the Section 114(a) Information Requests, the Three EGTs have operated out of compliance with the applicable hourly and annual $SO_2$ emission limits since at least 2015 through the present.

88.      By failing to comply with hourly and annual $SO_2$ emissions limits for the three EGTs Turbines, Defendant violated and continues to violate Title V of the CAA, the federally approved Michigan Title V program, and the applicable emissions limits in Section 3 of the ROP.

**$SO_2$ Exceedances for Three EGT-Associated Duct Burners**

89.      Section 3 of the ROP sets hourly and annual $SO_2$ emission limits for the Three EGT-Associated Duct Burners, as follows:

a.   hourly limit of 0.3 lbs/hr; and

b.   annual limit of 1.5 tpy, based on a rolling, 12-month average.

90.      Based on information that Defendant submitted to EPA in response to the Section 114(a) Information Requests, the Three EGT-Associated Duct Burners have operated out of compliance with the applicable hourly and annual $SO_2$ emission limits since at least 2015 through the present.

91.      By failing to comply with hourly and annual $SO_2$ emissions limits for the Three EGT-Associated Duct Burners, Defendant violated and continues to violate Title V of the CAA, the federally approved Michigan Title V program, and the applicable emissions limits in Section 3 of the ROP.

**SO$_2$ Exceedances for the Solar Taurus Turbine**

92.        Pursuant to 40 C.F.R. § 60.4330(a)(1) and (3), the NSPS for Stationary

Combustion Turbines requires, and Section 3 of the ROP reiterates, that the Solar Taurus

Turbine must meet either 0.90 lbs/MWh or 0.15 lbs/MMBtu heat input.

93.        Defendant completed a stack test on October 16-19, 2018, for the Solar

Taurus Turbine, which tested at a SO$_2$ emission rate of 1.45 lbs/MWh output.

94.        Defendant performed an additional stack test on December 20, 2019, for

the Solar Taurus Turbine, which tested at a SO$_2$ emission rate of 2.16 lbs/MWh output.

95.        Defendant completed a stack test on September 25, 2020, for the Solar

Taurus Turbine, which tested at a SO$_2$ emission rate of 2.02 lbs/MWh output.

96.        Based on the stack tests completed by Defendant, the Solar Taurus

Turbine operated out of compliance with the applicable SO$_2$ emission limit.

97.        By failing to comply with the SO$_2$ emission limit for the Solar Taurus

Turbine, Defendant violated and continues to violate Title V of the CAA, the federally approved

Michigan Title V program, the emissions limits established in Section 3 of the ROP, and the

NSPS for Stationary Combustion Turbines at 40 C.F.R. Part 60, Subpart KKKK, 40 C.F.R. §

60.4330(a).

**Second Claim for Relief: Failure to Operate Consistent with Good Air Pollution Control
Practices for Minimizing Emissions**

98.        Paragraphs 1 through 84 are re-alleged and incorporated by reference.

99.        Based on information that Defendant submitted to EPA in response to the

June 2016 Section 114(a) Information Request, there were numerous time periods when

Defendant failed to operate either the Three EGTs or any of the back-up flares to control the

collected LFG, causing excess LFG to escape into the atmosphere.

100.     The release of the excess LFG caused harm to the environment and public health as well as odor complaints from the surrounding community due to the release of LFG containing hydrogen sulfide, volatile organic compounds, HAPs, greenhouse gasses, and CO.

101.     By failing to operate either the Three EGTs or any of the back-up flares to control the collected LFG, Defendant violated and continues to violate the NSPS General Provisions, 40 C.F.R. § 60.11(d), and the NESHAP General Provisions, 40 C.F.R. § 63.6(e)(1), which require Defendant to operate the Facility and air pollution control equipment in a manner consistent with good air pollution control practices for minimizing emissions.

### Third Claim for Relief: Unpermitted Use of Diesel Fuel for Startup and Failure to Monitor Sulfur Content of Fuel

102.     Paragraphs 1 through 84 are re-alleged and incorporated by reference.

103.     EGLE's January 8, 2019 inspection found that the Facility was using diesel fuel to start up the Three EGTs.

104.     Diesel fuel is not included as a start-up or alternative fuel in the Facility ROP.

105.     Defendant had not notified EPA or EGLE of the modification of the Three EGTs for diesel use, obtained a permit for diesel use in the start-up of the Three EGTs, or monitored the sulfur content of the diesel fuel.

106.     By failing to notify EPA and EGLE of the modification of the Three EGTs for diesel fuel use, Defendant violated the NSPS General Provisions at 40 C.F.R. Part 60, Subpart A, 40 C.F.R. § 60.7.

107.     By failing to obtain a permit for diesel use in the start-up of the Three EGTs, Defendant violated and continues to violate Rule 201 of the Michigan SIP, Mich. Admin. Code R. 336.1201.

108.        By failing to monitor the sulfur content of the diesel fuel, Defendant violated and continues to violate the NSPS for Stationary Gas Turbines at 40 C.F.R. Part 60, Subpart GG, 40 C.F.R. 60.334(h).

**Fourth Claim for Relief: Venting of Untreated LFG when Compressors are Turned Off**

109.        Paragraphs 1 through 84 are re-alleged and incorporated by reference.

110.        EGLE's January 8, 2019 and November 14, 2019 inspections found that the Facility's four stacks for each of the main compressors and one combined stack for the two auxiliary compressors vent residual LFG in the system to the atmosphere whenever the compressors are turned off.

111.        By failing to route residual LFG in the system to a control system, Defendant violated and continues to violate the NSPS General Provisions at 40 C.F.R. § 60.11(d), the NESHAP General Provisions at 40 C.F.R. § 63.6(e)(1), the NSPS for MSW Landfills at 40 C.F.R. Part 60, Subpart WWW, 40 C.F.R. § 60.752(b)(2)(iii), and the NESHAP for MSW Landfills at 40 C.F.R. Part 63, Subpart AAAA, 40 C.F.R. § 63.1955.

**Fifth Claim for Relief: Stack Testing Not Representative of Routine Operating Conditions**

112.        Paragraphs 1 through 84 are re-alleged and incorporated by reference.

113.        Defendant's July 31, 2018 report for the performance testing that occurred from May 29 through June 1, 2018, showed that Defendant shut off 25 gas wells with high hydrogen sulfide content just prior to completing the stack test.

114.        By shutting off the 25 wells prior to the May 29 through June 1, 2018 performance testing, Defendant violated Michigan Rule 1003, Mich. Admin. Code R. 336.2003, because Defendant failed to conduct the performance test while the Facility was operating at maximum routine operating conditions.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 113 above, the United States of America and EGLE request that this Court:

1.     Permanently enjoin the Defendant from operating the Facility except in accordance with the Clean Air Act, NREPA, and all applicable federal and state regulatory requirements;

2.     Order the Defendant to remedy its violations of applicable state and federal regulations by, among other things, coming into compliance with the Facility ROP;

3     Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act and NREPA alleged above;

4.     Assess a civil penalty against the Defendant of up to $37,500 per day for each CAA violation occurring on or after January 13, 2009 and up to and including November 2, 2015, and $102,638 per day for each violation occurring after November 2, 2015;

5.     Assess a civil fine against the Defendant under Part 55 of the NREPA of $10,000 for each violation and $10,000 for each day of continued violation;

6.     Award Plaintiffs their costs of this action; and

7.     Grant such other relief as the Court deems just and proper.

Respectfully submitted,

OF COUNSEL:                                      FOR THE UNITED STATES OF AMERICA:


ANDRE DAUGAVIETIS                     TODD KIM
Associate Regional Counsel              Assistant Attorney General
U.S. EPA, Region 5 (C-14J)              Environment and Natural Resources
77 W. Jackson Boulevard                 Division
Chicago, Illinois 60604-3590            United States Department of Justice
Email: daugavietis.andre@epa.gov


                                                        s/ Katherine A. Abend
                                                        KATHERINE A. ABEND
                                                        Trial Attorney
                                                        Environmental Enforcement Section
                                                        Environmental and Natural Resources Division
                                                        United States Department of Justice
                                                        P.O. Box 7611
                                                        Ben Franklin Station
                                                        Washington, DC  20044
                                                        Telephone: (202) 514-2463
                                                        Email: Katherine.Abend@usdoj.gov


                                                        SAIMA S. MOHSIN
                                                        Acting United States Attorney
                                                        Eastern District of Michigan


                                                        s/ Kevin Erskine
                                                        KEVIN ERSKINE (P69120)
                                                        Assistant United States Attorney
                                                        Eastern District of Michigan
                                                        211 W. Fort St., Suite 2001
                                                        Detroit, MI 48226
                                                        Telephone: (313) 226-9610
                                                        Email: Kevin.Erskine@usdoj.gov

FOR THE MICHIGAN DEPARTMENT
OF ENVIRONMENT, GREAT LAKES,
AND ENERGY:


s/ Neil D. Gordon
NEIL D. GORDON
Assistant Attorney General
Michigan Department of Attorney General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909-8255
517-335-7664
gordonn1@michigan.gov